IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTOPHER EDELEN

    v.            :   Civil Action No. DKC 11-2744

AMERICAN RESIDENTIAL SERVICES,
    LLC., et al.

**MEMORANDUM OPINION**

Presently pending in this wage-and-hour law case is the unopposed motion (ECF No. 34) filed by Plaintiff Christopher Edelen seeking an order that: (1) grants final approval of a settlement agreement between Plaintiff and Defendants American Residential Services, LLC (d/b/a/ "ARS®/Rescue Rooter®") and American Residential Services Management Corporation (together, "Defendants"); (2) grants final certification of the settlement class pursuant to Fed.R.Civ.P. 23; (3) grants final certification of this matter as a collective action pursuant to 29 U.S.C. § 216(b); (4) approves a payment of $32,000.00 to class counsel for their attorneys' fees and litigation expenses; (5) approves an incentive payment of $1,000.00 to Mr. Edelen; and (6) dismisses this action with prejudice, with the court to retain jurisdiction over the interpretation, enforcement, and implementation of the settlement agreement and the final order. For the following reasons, the motion will be granted.

## I. Background

From approximately June 2010 until July 2011, Mr. Edelen worked as an HVAC technician at a facility in Laurel, Maryland, owned by Defendants. On September 23, 2011, Mr. Edelen filed a collective action complaint against Defendants, alleging two violations of the Fair Labor Standards Act ("the FLSA"), 29 U.S.C. §§ 201 *et seq.* (ECF No. 1). First, Mr. Edelen alleged that Defendants violated the FLSA in calculating his overtime rate of pay by using only his fixed hourly wage of $18.00 multiplied by 1.5, instead of combining his fixed hourly wage with his non-hourly compensation (*e.g.*, commissions and bonuses) and then multiplying that total by 1.5. (*Id.* ¶¶ 18-20). Second, Mr. Edelen alleged that Defendants failed to compensate him properly for his work in connection with a referral program with American Home Shield by paying him a flat, pre-determined rate instead of paying him on a per-hour basis. (*Id.* ¶¶ 21-25). Mr. Edelen asserted these allegations on behalf of himself and a putative class of all technicians employed by Defendants anywhere in the nation since September 23, 2008. (*Id.* ¶¶ 26-27). On January 5, 2012, Defendants filed an answer that denied the bulk of Mr. Edelen's allegations and asserted a number of affirmative defenses, including that any actions or omissions giving rise to Mr. Edelen's claims were undertaken in good faith

and with reasonable grounds for believing such conduct did not violate the FLSA. (ECF No. 15).

The parties agreed to engage in limited discovery prior to Mr. Edelen moving for conditional certification of his proposed collective class. (*See* ECF No. 19). In addition to exchanging written discovery, Mr. Edelen deposed a corporate representative of Defendants pursuant to Fed.R.Civ.P. 30(b)(6). (ECF No. 34-1, at 2). After conducting this discovery and engaging in preliminary settlement discussions, the parties stipulated to the filing of an amended complaint by Mr. Edelen that asserts only allegations relating to Defendants' calculation of overtime pay rates on behalf of only those HVAC technicians employed at the Laurel facility since September 2008. (ECF No. 27). Based on these alleged facts, the amended complaint asserts two counts: a collective action count under the FLSA and a class action count under the Maryland Wage and Hour Law ("the MWHL"), Md. Code. Ann., Lab. & Empl. §§ 3-401 *et seq.* (*Id.* ¶¶ 23-43).

After Mr. Edelen filed the amended complaint, Defendants filed an answer (ECF No. 28) and provided him with detailed payroll data regarding the overtime wages paid to Mr. Edelen and a sample of eleven other HVAC technicians employed at the Laurel facility during the statute of limitations period (ECF No. 34-1, at 3). According to Mr. Edelen, a review of this data demonstrated an average weekly underpayment of $8.54 for all

3

HVAC technicians in the sample, ranging from $0.42 per workweek to $13.15 per workweek. (*Id.*).

Following additional negotiations, the parties entered into a formal settlement agreement ("the Settlement Agreement"). The Settlement Agreement contemplates certification of a settlement class consisting of 59 individuals who worked as HVAC technicians at Defendants' Laurel facility during any workweek between September 23, 2008 and October 5, 2011. (ECF No. 29-1). In very basic terms, the Settlement Agreement requires Defendants to pay a maximum of $68,055.75, divided as follows: (1) $38,055.75, less applicable payroll taxes, paid to class members, representing $10.75 for every week worked during the relevant timeframe, regardless of whether there was an actual underpayment in that week; (2) subject to court approval, a $1,000.00 incentive payment to Mr. Edelen in recognition of his efforts on behalf of the class; and (3) subject to court approval, $32,000.00 to Mr. Edelen's counsel for attorneys' fees and expenses. (*See id.*).

The consideration offered in exchange reflects the hybrid nature of Mr. Edelen's amended complaint and the different procedures governing Rule 23 class actions and FLSA collective actions. With respect to the MWHL claims, the Settlement Agreement provides that those class members who do not exclude themselves in a specified timeframe agree to release all MWHL

claims arising out of Defendants' alleged failure to calculate their overtime rates of pay properly during the period from September 23, 2008, to October 5, 2011. (*Id.* ¶ 5). With respect to the FLSA claims, those members of the proposed collective class who sign or endorse their settlement checks from Defendants will be deemed to have agreed to (1) joining the FLSA collective action and (2) releasing their FLSA claims (including any claims for liquidated damages) arising out of Defendants' purported failure to calculate their overtime rates of pay properly during the period from September 23, 2008, to October 5, 2011. (*Id.*). Class members do not agree to release any other types of legal claims against Defendants, except that Mr. Edelen individually agrees to a broad, general release. (*Id.* ¶ 12).

On April 19, 2013, Mr. Edelen filed an unopposed motion seeking preliminary approval of the Settlement Agreement. (ECF No. 29). On May 23, 2013, the court issued an order ("the Preliminary Approval Order") granting Mr. Edelen's motion and preliminarily approving the Settlement Agreement (1) as fair, reasonable, and adequate within the meaning of Fed.R.Civ.P. 23(e) and (2) as representing a fair and reasonable compromise of a *bona fide* FLSA dispute. (ECF No. 32). The Preliminary Approval Order conditionally certified the following class both as a class action pursuant to Fed.R.Civ.P. 23(a) & 23(b)(3)

("the Rule 23 Settlement Class") and as a collective action pursuant to 29 U.S.C. § 216(b) ("the Collective Settlement Class"):

> Every individual employed by Defendants at their company-owned service facility in Laurel, Maryland as an HVAC Technician during any workweek between September 23, 2008 and October 5, 2011.

The Preliminary Approval Order appointed Mr. Edelen as class representative. The Preliminary Approval Order also appointed the law firms of Joseph, Greenwald & Laake, P.A., and Winebrake & Santillo, LLC, as class counsel, and Heffler Claims Group as claims administrator. Finally, the Preliminary Approval Order approved the notice forms provided by the parties; instructed the parties to comply with the notice protocols set forth in the Settlement Agreement; and set the final fairness hearing, which was held on July 22, 2013, at 9:30 a.m.

## II. Analysis

After carefully considering the terms of the Settlement Agreement (ECF No. 29-1), the unopposed motion for final approval (ECF No. 34), the supplemental materials in support thereof (ECF No. 36), and the statements of counsel for both parties at the final fairness hearing held on July 22, 2013 (ECF No. 38), the court now addresses whether the Rule 23 and Collective Settlement Classes should receive final certification; whether the Settlement Agreement is fair,

reasonable, and adequate; whether the Settlement Agreement represents a fair compromise of a *bona fide* FLSA dispute; and whether class counsel's request for attorneys' fees and costs, as well as an incentive payment for Mr. Edelen, should be granted. Each of these issues will be addressed, in turn.

### A. Final Certification of the Settlement Class

Because the proposed Settlement Agreement seeks to resolve a so-called hybrid wage-and-hour law case that raises both collective action claims under the FLSA and class action claims under the MWHL, two separate standards are implicated by Mr. Edelen's request for final class certification.

### 1. Certification of the Collective Settlement Class

"Under the FLSA, plaintiffs may maintain a collective action against their employer for violations under the act pursuant to 29 U.S.C. § 216(b)." *Quinteros v. Sparkle Cleaning, Inc.*, 532 F.Supp.2d 762, 771 (D.Md. 2008). Section 216(b) provides, in relevant part, as follows:

> An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

"This provision establishes an 'opt-in' scheme, whereby potential plaintiffs must affirmatively notify the court of

their intentions to be a party to the suit." *Quinteros*, 532
F.Supp.2d at 771 (quoting *Camper v. Home Quality Mgmt., Inc*.,
200 F.R.D. 516, 519 (D.Md. 2000)).

Deciding whether to certify a collective action pursuant to
the FLSA generally requires a two-stage process. *Syrja v.
Westat, Inc.*, 756 F.Supp.2d 682, 686 (D.Md. 2010). In the first
stage, a "threshold determination" must be made regarding
"'whether the plaintiffs have demonstrated that potential class
members are 'similarly situated,' such that court-facilitated
notice to the putative class members would be appropriate.'"
*Id.* (quoting *Camper*, 200 F.R.D. at 519). Here, the Preliminary
Approval Order found that Mr. Edelen satisfied the modest
factual showing that is required with respect to the first stage
and granted conditional certification of the Collective
Settlement Class. (ECF No. 32 ¶ 6).

In the second stage – which generally occurs following the
close of discovery and upon a defendant's motion for
decertification – a "more stringent inquiry" is undertaken to
determine whether the plaintiffs are, in fact, "similarly
situated," as required by § 216(b). *Rawls v. Augustine Home
Health Care, Inc.*, 244 F.R.D. 298, 300 (D.Md. 2007). Even when
parties agreed to settle an FLSA dispute on behalf of a class of
similarly situated employees, "'some final class certification'"
determination must be made "'before approving a collective

action settlement.'" *Carter v. Anderson Merchs., LP*, Nos. 08-cv-00025, 09-cv-0216, 2010 WL 144067, at *3 (C.D.Cal. Jan. 7, 2010) (quoting *Burton v. Utility Design, Inc.*, No. 07-cv-1045, 2008 WL 2856983, at *2 (M.D.Fla. July 22, 2008)). Relevant factors to consider in deciding whether to grant final certification include "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the] defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Rawls*, 244 F.R.D. at 300 (internal quotation marks omitted). Because the analysis "'largely overlap[s] with class certification analysis under Federal Rule of Civil Procedure 23(a)," these factors need only be "address[ed] . . . in passing." *Bredbenner v. Liberty Travel, Inc.*, Nos. 09-cv-905, 09-cv-1248, 09-cv-4587, 2011 WL 1344745, at *17 (D.N.J. Apr. 8, 2011) (quoting *Murillo v. Pac. Gas & Elec. Co.*, No. 08-cv-1984, 2010 WL 2889728, at *3 (E.D.Cal. July 21, 2010) (first alteration in original)).

Here, the factual circumstances underlying the claims of each member of the Collective Settlement Class are similar rather than disparate. Each held the same position (HVAC technician), at the same location (Defendants' Laurel facility), and allegedly received compensation in accordance with a common method for calculating overtime rates of pay. The class as a

whole is therefore "similarly situated" to Mr. Edelen. Second, Defendants have not offered any defenses that are individualized in nature. (*See* ECF No. 34-1, at 16-17). In any event, individualized defenses typically raise concerns because they pose case management problems; such complications are largely irrelevant where a collective class is being certified for settlement purposes. *Cf. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (in the Rule 23 class action context, no need to account for case management issues when deciding whether to certify a class for settlement purposes). Finally, with respect to fairness, a settlement resolving the FLSA overtime claims of all Laurel-based HVAC technicians is an efficient and cost-effective means of resolving the common issue (*i.e.*, the legality of Defendants' method for calculating overtime rates of pay). *See Rawls*, 344 F.R.D. at 298 (noting that collective action treatment would serve as an efficient means of resolving a facility-wide FLSA dispute and would further the purposes of § 216(b) by allowing the class members to pool their resources).

In sum, because Mr. Edelen is, in fact, similarly situated to the members of the Collective Settlement Class, final certification pursuant to § 216(b) is warranted.

## 2. Rule 23 Class Certification

A class action will be certified only if it meets the four prerequisites identified in Rule 23(a) and also fits within one

of the three subdivisions of Rule 23(b). The United States Supreme Court has held that district courts "must pay undiluted, even heightened attention" to class certification requirements in the settlement context. *Amchem Prods.*, 521 U.S. at 620 (internal quotations marked omitted); *see also Grice v. PNC Mortg. Corp. of Am.*, No. PJM-97-3084, 1998 WL 350581, at *2 (D.Md. May 21, 1998) ("Despite the parties' agreement, class certification must be carefully scrutinized.").

**a.   Rule 23(a) Prerequisites**

Rule 23(a) provides as follows:

> (a) Prerequisites.  One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Based on a review of the parties' submissions, the Rule 23 Settlement Class meets the numerosity, commonality, typicality, and adequacy requirements.

Although there is no precise threshold for determining numerosity, *see Gen. Tel. Co. v. E.E.O.C.*, 446 U.S. 318, 330 (1980), the Rule 23 Settlement Class, which consists of 59 individuals, is larger than other classes that have been

certified in the Fourth Circuit. *See, e.g.*, *In re Kirschner Med. Corp. Sec. Litig.*, 139 F.R.D. 74, 78 (D.Md. 1997) (observing that a class size of 25 to 30 members raises a presumption that the numerosity requirement is met). Moreover, numerosity is satisfied where joinder of all putative class members would prove to be "impracticable." *Hewlett v. Premier Salons Int'l, Inc*., 185 F.R.D. 211, 215 (D.Md. 1997) (explaining that practicability of joinder depends on a variety of factors, including the geographic dispersion of putative class members and the size of their claims). Given the relatively small dollar value of the class members' individual claims here – which range from a minimum of approximately $30.00 to a maximum of approximately $2,100.00 (*see* ECF No. 34-1, at 3; ECF No. 29-1, at 16-17) – joinder seems unlikely here.

To establish commonality, the party seeking certification must "demonstrate that the class members have suffered the same injury" and that their claims "depend upon a common contention." *Wal–Mart Stores, Inc. v. Dukes*, --- U.S. ----, 131 S.Ct. 2541, 2551 (2011) (internal quotation marks omitted). "That common contention, moreover, must be of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Here, all members of the Rule 23 Settlement Class worked as HVAC technicians at a single facility in Laurel during a single time period from September 23, 2008, until October 5, 2011. (ECF No. 34-1, at 2-4).  According to class counsel's review of a sampling of payroll data from this time period, Defendants had a common practice of calculating overtime pay rates for HVAC technicians that excluded non-hourly forms of compensation. (*See id.*).  Thus, a question of law that is common to the Rule 23 Settlement Class is whether Defendants' method for calculating overtime pay between September 2008 and October 2011 violates the MWHL.  In other words, the success or failure of the claims held by class members turns on the veracity of Mr. Edelen's contention that Defendants' overtime calculation policy at the Laurel facility during the relevant time period violates the MWHL.  Because resolution of this common contention would resolve "each one of the claims in one stroke," *Dukes*, 131 S.Ct. at 2551, the Rule 23 Settlement Class satisfies the commonality prerequisite.

The typicality requirement "goes to the heart of a representative part[y's] ability to represent a class." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006).  The representative's claim need not "be perfectly identical [to] or perfectly aligned" with the claims of class members, so long as any variation does not "strike[] at the heart of the respective

13

causes of actions." *Id.* at 467.  Here, Mr. Edelen asserts that he suffered damages when Defendants excluded his non-hourly wages in calculating his rate of overtime pay, in violation of the MWHL.  Mr. Edelen's interest in prosecuting this claim would also tend to advance the interests of the members of the Rule 23 Settlement Class, each of whom also allegedly suffered a loss in wages as a result of the same method for calculating overtime rates of pay.  Although Mr. Edelen may have worked more or less overtime than other class members in a given week and therefore might ultimately be entitled to greater or lesser damages, such factual differences do not defeat typicality because the legality of the overtime calculation policy itself is at the heart of Mr. Edelen's MWHL claim.  Ultimately, "as goes the claim of [Mr. Edelen], so go the claims of" the Rule 23 Settlement Class.  *Deiter*, 436 F.3d at 466.

Finally, Rule 23(a)(4) requires "representative parties [who] will fairly and adequately protect the interests of the class."  Representation is adequate if:  (1) the named plaintiff's interests are not opposed to those of other class members, and (2) the plaintiff's attorneys are qualified, experienced, and capable.  *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 558 (D.Md. 2006).  Here, as discussed, there is no apparent conflict between the interests of Mr. Edelen and the interests of the Rule 23 Settlement Class.

Rather, Mr. Edelen shares an interest with class members in establishing the illegality of Defendants' method for calculating overtime rates of pay. Moreover, as noted in the Preliminary Approval Order (ECF No. 32 ¶ 5(d)), class counsel are qualified, experienced, and competent, as evidenced by their background in litigating wage-and-hour class action lawsuits (*see* ECF Nos. 29-2 & 29-3). Accordingly, the Rule 23 Settlement Class satisfies each of the Rule 23(a) prerequisites.

### b.    Rule 23(b) Requirements

The next step is to determine whether the requirements of one of the three subdivisions of Rule 23(b) have been met. Mr. Edelen invokes Rule 23(b)(3), which permits a class action to be maintained only if it can be concluded (1) that "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The predominance inquiry focuses on whether liability issues are subject to class-wide proof or require individualized and fact-intensive determinations. *Cuthie v. Fleet Reserve Ass'n*, 743 F.Supp.2d 486, 499 (D.Md. 2010). Deciding whether common questions predominate over individual ones involves a qualitative, rather than quantitative, inquiry. *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 429 (4th Cir. 2003).

As set forth above, the claims of the Rule 23 Settlement Class present the same legal question, *i.e.*, whether Defendants' alleged common method for calculating overtime rates of pay at the Laurel facility violated the MWHL. Although the determination of damages for each class member would require a certain degree of individualized inquiry given that the class members worked for a different number of weeks during the relevant timeframe (ranging from 3 weeks to 161 weeks) and logged a different number of overtime hours in those weeks, such computations do not require "separate mini-trials." *Hewlett*, 185 F.R.D. at 220. Instead, the record indicates that individualized damages figures are easily ascertainable by examining Defendants' standardized timekeeping and payroll records for the Laurel facility. (*See, e.g.*, ECF No. 34-1, at 20). Moreover, the "qualitatively overarching issue by far" is the legality of Defendants' alleged common method for calculating overtime rates of pay during the time period in question, such that "the individual statutory damages issues are insufficient to defeat class certification." *Stillmock v. Weis Markets, Inc.*, 385 F.App'x 267, 273 (4th Cir. 2010) (unpublished table decision). Thus, the Rule 23 Settlement Class satisfies the predominance inquiry.

With respect to the superiority prong of Rule 23(b)(3), four factors generally should be considered:

> (i) the strength of the individual class
> members' interest in controlling the
> prosecution and defense of a separate
> action, (ii) the extent and nature of
> existing litigation already begun by or
> against class members, (iii) the
> desirability or undesirability of
> concentrating the litigation in the single
> forum selected by the class plaintiffs, and
> (iv) the likely difficulties in managing the
> class action.

*Lloyd v. Gen. Motors Corp.*, 275 F.R.D. 224, 228 (D.Md. 2011).

Here, each of these factors weighs in favor of final certification. First, as noted, the dollar values of the class members' claims are small as compared to the costs associated with pursuing individual lawsuits, giving rise to a strong interest in class litigation. *See, e.g.*, *Jones v. Murphy*, 256 F.R.D. 519, 524 (D.Md. 2009) ("Class treatment is appropriate in situations, such as here, where the individual claims of many of the putative class members are so small that it would not be economically efficient for them to maintain individual suits."). Second, no class member has separately initiated litigation against Defendants regarding the calculation of overtime pay rates at the Laurel facility. (*See* ECF No. 34-1, at 21). Third, concentrating litigation of the class members' claims here in the Southern Division of the District of Maryland is desirable given its proximity to the Laurel facility at issue. Finally, manageability concerns are irrelevant when a class is

being certified only for settlement purposes. *See Amchem Prods.*, 521 U.S. at 593.

In sum, because the Rule 23 Settlement Class satisfies the requirements of both Rule 23(a) and 23(b)(3), final certification will be granted.

**B. Final Approval of the Settlement Agreement**

Having determined that final certification of both the Rule 23 Settlement Class and the Collective Settlement Class is warranted, the terms of the Settlement Agreement itself must be addressed. Here again, because of the hybrid nature of this case, two standards are implicated by Mr. Edelen's motion for final approval.

**1. Fairness, Reasonableness, & Adequacy Under Rule 23**

Pursuant to Rule 23(e), a settlement agreement that binds members of a class action can only be approved upon a "finding that it is fair, reasonable, and adequate." "The 'fairness' prong is concerned with the procedural propriety of the proposed settlement agreement, while the 'adequacy' prong focuses on the agreement's substantive propriety." *In re Am. Capital S'holder Derivative Litig.*, Nos. 11-2424-PJM, 11-2428-PJM/AW, 11-2459-PJM, 11-2459-RWT, 2013 WL 3322294, at *2 (D.Md. June 28, 2013).

**a. Fairness**

In evaluating the fairness of a proposed settlement, the following factors must be considered: (1) the presence or

absence of collusion among the parties; (2) the posture of the case at the time settlement is proposed; (3) the extent of discovery that has been conducted; and (4) the circumstances surrounding the negotiations and the experience of counsel. *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F.Supp. 1379, 1383-84 (D.Md. 1983). The fairness inquiry serves to protect against the danger that counsel might "compromise[e] a suit for an inadequate amount for the sake of insuring a fee." *Id.* at 1383 (internal quotation marks omitted).

Here, each of the fairness factors weighs in favor of final approval. The record indicates that the Settlement Agreement is the product of good faith bargaining conducted at arm's length. In particular, Mr. Edelen represents that the parties exchanged six different proposals over the course of three months before reaching a tentative agreement, after which the parties continued to negotiate additional terms. (ECF No. 34-1, at 8). Moreover, nothing in the record hints of collusion.

With respect to the posture of the case, the parties reached the Settlement Agreement after engaging in discovery regarding the issue of conditional certification, which included a Rule 30(b)(6) deposition of Defendants' corporate representative and the production of payroll and timekeeping records by Defendants. Although the scope of this discovery was somewhat limited and no dispositive motions were ever filed, it

appears that all parties had sufficient information about their claims and defenses at the time they began exploring the possibility of settlement. Finally, as has been noted, the declarations and résumés submitted by class counsel establish that they are qualified, experienced, and competent. (*See* ECF Nos. 29-2 & 29-3).

### b. Adequacy

The adequacy prong requires consideration of: (1) the relative strength of the plaintiff's case on the merits and probability for success at trial; (2) the anticipated duration and expense of additional litigation; (3) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (4) the degree of opposition to the settlement. *In re Mid-Atl. Toyota*, 564 F.Supp. at 1384. The purpose of the adequacy analysis is to "weigh the likelihood of the plaintiff's recovery on the merits against the amount offered in settlement." *Id.* (internal quotation marks omitted).

Here, the adequacy factors, on balance, counsel in favor of final approval of the Settlement Agreement. The present record – which consists primarily of the pleadings and the motions for preliminary and final approval of the Settlement Agreement – makes it difficult to ascertain the factual and legal merits of Mr. Edelen's contention that Defendants improperly excluded non-hourly forms of compensation when calculating class members'

overtime rates of pay. The authority cited by Mr. Edelen in his amended complaint provides support for his position that, under the FLSA, an employee's regular rate of pay (which is multiplied by 1.5 to determine the employee's overtime rate of pay) must include both hourly and non-hourly forms of compensation. *E.g.*, 29 C.F.R. § 778.109 (for employees who are paid on a non-hourly basis, the regular rate is determined by dividing the employees "total remuneration for employment (except statutory exclusions) in any workweek by the amount of hours actually worked"); *see also* 29 U.S.C. § 207(e) (an employee's "regular rate" for purposes of the FLSA includes "all remuneration" not otherwise exempted); *Friolo v. Frankel*, 373 Md. 501, 513 (2003) (explaining that the MWHL is "the State parallel" to the FLSA). In addition, class counsel represents that their analysis of a sampling of 12 technicians' payroll data during the relevant timeframe demonstrated a pattern of excluding certain non-hourly forms of compensation. (ECF No. 34-1, at 3). For their part, Defendants disagree with Mr. Edelen's positions regarding what was and what should have been included in calculating his "total remuneration" for purposes of regular and overtime pay. (*Id.* at 15-16).

The existence of these disputed legal and factual issues creates uncertainty and risk for all parties moving forward. Additionally, even if Mr. Edelen's legal position regarding the

proper calculation method proved meritorious, he admits that certain members of the Rule 23 Settlement Class would be entitled to very little in the way of damages – for some, as little as $0.42 per workweek. Furthermore, absent final approval of the Settlement Agreement, litigation of this dispute could prove to be long and expensive. In particular, the likely next steps in this case – *e.g.*, seeking class certification, engaging in additional discovery, and filing dispositive motions – would require substantial time by the parties' attorneys. Although there is nothing to indicate that Defendants would be unable to satisfy a judgment if one were ultimately entered, it is not clear how long it might take to resolve this lawsuit. On balance, the risks, delays, and costs associated with further litigation weigh in favor of granting final approval of the Settlement Agreement.

Lastly, there has been no opposition to the Settlement Agreement. Consistent with the Preliminary Approval Order and the terms of the Settlement Agreement, the settlement administrator mailed personalized notice forms to all 59 members of the Rule 23 Settlement Class on June 7, 2013 – the best notice practicable under the circumstances. The notice form informed each class member, in clear and concise language, of the basis for this lawsuit; the definition of the Rule 23 and Collective Settlement Classes; the procedure for and

consequences of opting in to the Settlement Agreement; the key terms of the Settlement Agreement, including the member's gross recovery as an individual; the process for objecting to the Settlement Agreement; and the date, time, and place of the final fairness hearing. Thus, the form and method of notice complied with Fed.R.Civ.P. 23(c)(2) & 23(e).

The postmark deadline for filing objections or opt-out requests was July 8, 2013. To date, no objections or opt-out requests have been received by the court or by counsel, and no one appeared at the final fairness hearing to lodge any objections. The lack of objections provides further support for final approval of the Settlement Agreement as fair, adequate, and reasonable.

## C. Reasonable Settlement of *Bona Fide* Dispute

A district court can approve an FLSA settlement between an employer and an employee who has brought a private action pursuant to Section 216(b) only upon a finding that the agreement represents a "reasonable compromise of disputed issues" rather than "a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). Although the Fourth Circuit has not directly addressed the factors to be considered in deciding motions for approval of such settlements, district courts in this circuit typically

employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*. *See, e.g.*, *Hoffman v. First Student, Inc.*, No. WDQ-06-1882, 2010 WL 1176641, at *2 (D.Md. Mar. 23, 2010); *Lopez v. NTI, LLC*, 748 F.Supp.2d 471, 478 (D.Md. 2010). Pursuant to *Lynn's Food Stores*, an FLSA settlement generally should be approved if it reflects "a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Lynn's Food*, 679 F.2d at 1355.

Thus, as a first step, the *bona fides* of the parties' dispute must be examined to determine if there are FLSA issues that are "actually in dispute." *Lane v. Ko-Me, LLC*, No. DKC-10-2261, 2011 WL 3880427, at *2 (D.Md. Aug. 31, 2011) (citing *Dees v. Hydradry, Inc.*, 706 F.Supp.2d 1227, 1241-42 (M.D.Fla. 2010)). As a second step, the terms of the proposed settlement agreement must be assessed for fairness and reasonableness. In the Fourth Circuit, the same "fairness factors generally considered for court approval of class action settlements under Federal Rule of Civil Procedure 23" are used in this second step. *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-cv-1310, 2009 WL 3094955, at *10 (E.D.Va. Sept. 28, 2009).

Here, as evidenced by the pleadings, the motion for final approval, and the terms of the Settlement Agreement itself, a *bona fide* dispute exists as to Defendants' liability under the FLSA. *See id.* at *16-17 (examining the complaint, answer, and

the parties' recitals in the proposed settlement to conclude that a *bona fide* dispute existed). First, the parties disagree as to whether Defendants properly included all non-exempted forms of remuneration in calculating overtimes rates of pay at the Laurel facility. Second, even to the extent that Mr. Edelen's legal position is credited, the parties disagree as to the amount of unpaid wages that would be owed to members of the Collective Settlement Class. Mr. Edelen believes that the damages suffered by most class members would be closer to the figure of $13.15 per workweek (*i.e.*, the high end of the range of underpayment rates found in the 12-technician sample), while Defendants contend that most class members' damages would be closer to $0.42 per workweek (*i.e.*, the lower range of the sample). Third, the parties dispute the availability of liquidated damages. According to class counsel, Mr. Edelen would have argued that Defendants acted "willfully" in improperly calculating the overtime rates of pay owed to class members, warranting double damages as high as $26.30 per week worked. Defendants represent that they would have invoked a good faith defense to liquidated damages by arguing that any underpayments to class members were unintentional. Relatedly, the parties dispute whether the FLSA's three-year limitations period – which applies only where an employer demonstrates

indifference towards the FLSA requirements, *see* 29 U.S.C. § 255(a) – would apply.

Given the disparity in the figures proposed by each side, their apparent disagreements about the meaning of the phrase "all remuneration," and the uncertainty regarding liquidated damages and the statute of limitations, the rate of underpayment used in the Settlement Agreement – $8.54 per week worked – constitutes a reasonable compromise of class members' FLSA claims. Additionally, as discussed, consideration of the Rule 23(e) factors establishes the fairness and reasonableness of the Settlement Agreement. Accordingly, the Settlement Agreement will be approved as a fair and reasonable resolution of a *bona fide* dispute.

### D. Attorneys' Fees & Costs

In approving either a Rule 23 settlement or a private settlement of FLSA claims, the reasonableness of any award of attorneys' fees must be assessed. *See, e.g.*, *Grice*, 1998 WL 350581, at *6 (Rule 23 class action settlement settlement); *Ko-Me, LLC*, 2011 WL 3880427, at *2-3 (FLSA collective action settlement). As noted, the Settlement Agreement provides that Defendants will pay class counsel up to $32,000.00 in attorneys' fees and litigation expenses, subject to court approval. (ECF No. 29-1, ¶ 13). In the motion for final approval, class counsel request an award of $1,199.20 for out-of-pocket

litigation expenses and $30,800.80 in attorneys' fees. (ECF No. 34-1, at 23-31).

In any action under the FLSA, "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The payment of attorneys' fees and costs to employees who prevail on FLSA claims is mandatory. "The amount of the attorney's fees, however, is within the sound discretion of the trial court." *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984). The MWHL also allows for the recovery of attorneys' fees and costs. *See* Md. Code Ann., Lab. & Empl. § 3-427 ("If a court determines that an employee is entitled to recovery in an action under this section, the court may allow against the employer reasonable counsel fees and other costs."); *accord* Fed.R.Civ.P. 23(h) (establishing that reasonable attorneys' fees and nontaxable costs that are authorized by law may be awarded in a certified class action).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) — an approach commonly known as the "lodestar" method, *Grissom v. The Mills*

*Corp.*, 549 F.3d 313, 320 (4th Cir. 2008).[1]  In deciding what constitutes a "reasonable" number of hours and a "reasonable" rate, numerous factors may prove pertinent, including:

> "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases."

*Robinson v. Equifax Info. Servs.*, 560 F.3d 235, 243-44 (4th Cir. 2009) (quoting *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)).[2]  "[T]he burden rests with the fee applicant to

---

[1] Maryland courts also use the "lodestar" approach when determining attorneys' fees under fee-shifting statutes. *See, e.g.*, *Friolo*, 373 Md. at 504-05.

[2] The United States Supreme Court recently appeared to question the approach adopted by the Fourth Circuit in *Kimbrell's* – originally set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) – describing it as an "alternative" to the lodestar method and explaining that it provides too little guidance for district courts and places too great of an emphasis on subjective considerations. *See Perdue v. Kenny A.*, 559 U.S. 542, 130 S.Ct. 1662, 1672 (2010) ("[T]he lodestar method is readily administrable, and unlike the *Johnson*

28

establish the reasonableness of a requested rate." *Id.* (quoting *Plyler v. Evatt*, 902 F.2d 273, 277–78 (4th Cir. 1990)). "In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award," including, for example, "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." *Id.* at 244, 245 (internal quotation marks omitted).

After arriving at the lodestar figure, the "'fees for hours spent on unsuccessful claims unrelated to successful ones'" should be subtracted. *Grissom*, 549 F.3d at 321 (quoting *Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir. 2002)). Lastly, "[o]nce the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage

approach, the lodestar calculation is objective, and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." (internal citations omitted)). Nonetheless, "the *Johnson* factors, as opposed to the *Johnson* method, are still relevant in informing the court's determination of a reasonable fee and a reasonable hourly rate"; "[*Perdue*] cautions against using a strict *Johnson* approach as the primary basis for determining reasonable attorneys' fees, but nowhere calls into question the idea of using relevant *Johnson* factors in helping to come to a reasonable fee." *Spencer v. Cent. Servs., LLC*, No. CCB-10-3469, 2012 WL 142978, at *5-6 (D.Md. Jan. 13, 2012) (internal quotations marks and citations omitted).

of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.* (internal quotation marks and citation omitted).

In support of their request for attorneys' fees in the amount of $30,800.80, class counsel submit attorney declarations from R. Andrew Santillo of Winebrake & Santillo, LLC (ECF No. 34-1, at 37-40) and Brian J. Markovitz of Joseph, Greenwald & Laake, P.A. (*id.* at 48-51), both of whom attest to the number of hours spent on this litigation by attorneys and non-attorneys in their respective firms. As amended by class counsel's supplemental brief in support of their fee request (ECF No. 36, at 1-2),[3] Mr. Santillo represents that his firm expended a total of 101.8 hours on this case, including 83.0 hours by Mr. Santillo, a junior partner with nearly 9 years of experience, and 18.8 hours by Mark J. Gottesfeld, an associate with nearly 4 years of experience. (ECF No. 34-1, at 38-39, Santillo Decl. ¶¶ 3-4). Mr. Markovitz, in turn, attests that his firm spent 74.1 hours on this litigation, including 47.7 hours by Mr. Markovitz, a partner with almost 13 years of experience, and 26.4 hours by a combination of three legal assistants and a

---

[3] To "streamline" the lodestar analysis, class counsel are no longer requesting compensation for the 1.9 hours of time expended by Peter Winebrake, a senior partner at Winebrake & Santillo, LLC, or for the 0.4 hours of time expended by Steven Vinick, a partner at Joseph, Greenwald & Laake, P.A. (ECF No. 36, at 1-2).

paralegal. (ECF No. 34-1, at 49-50, Markovitz Decl. ¶¶ 3-4).

Class counsel substantiate these averments with detailed time

records for both firms, broken down by six-minute increments

according to specific tasks. (ECF No. 34-1, at 41-47, 53-55).

With respect to hourly rates, class counsel propose using

the higher end of the ranges set forth in Appendix B to the

Local Rules – in other words, $300.00 per hour for Mr.

Markovitz, $250.00 per hour for Mr. Santillo, $190.00 per hour

for Mr. Gottesfeld, and $115.00 per hour for all paralegals and

law clerks. Class counsel thus contends that the proper

lodestar figure is $41,668.00 – approximately $11,000.00 more

than what the Settlement Agreement contemplates and what class

counsel are actually requesting.

To support the reasonableness of their proposed rates,

class counsel submit a second attorney declaration from Mr.

Markovitz, which focuses on his firm's customary rates for work

of this nature. (*See* ECF No. 36, at 14-17, Supplemental

Markovitz Decl.). Mr. Markovitz avers that he is a partner at a

Greenbelt-based litigation firm and focuses his practice on

employment law, having served as the primary attorney of record

in "hundreds" of employment cases, including FLSA disputes.

(*Id.* ¶ 4). Mr. Markovitz also states that, as of January 2012,

the rate he typically charges to paying clients is $350.00 per

hour – *i.e.*, $50.00 more than the rate that class counsel

suggest using to calculate the lodestar figure. (*Id.* ¶ 5). With respect to the non-attorneys who worked on this case, Mr. Markovitz represents that his law firm typically charges paying clients between $115.00 and $130.00 per hour for these specific paralegals and law clerks – *i.e.*, equal to or slightly more than the hourly rates proposed here. (*Id.* ¶ 6).

As further support for using the higher ends of the Appendix B ranges, class counsel offer a declaration from Linda Hitt Thatcher, a Greenbelt-based attorney, that was originally submitted in December 2012 in connection with a contested fee petition in the lawsuit captioned *Grayson v. Register Tapes Unlimited, Inc.*, No. RWT-11-887. (ECF No. 36, at 6-9, Thatcher Decl.). *Grayson* was another wage-and-hour lawsuit in this division in which Mr. Santillo and Mr. Markovitz served as class counsel. For purposes of that lawsuit, Ms. Thatcher averred that, based on her own experience litigating employment disputes, the prevailing market rate in the Greenbelt, Maryland legal community for someone of Mr. Markovitz's experience level is between $350.00 and $400.00 per hour, such that a rate in the range of $300.00 to $350.00 per hour is "***extremely*** reasonable." (*Id.* ¶ 5) (emphasis in original). Ms. Thatcher likewise averred that the prevailing market rates in Greenbelt for lawyers of Mr. Santillo's and Mr. Gottesfeld's experience and skill levels are, respectively, between $300.00 and $350.00 per hour and between

$175.00 and $225.00 per hour. (*Id.* ¶¶ 6-7). Thus, according to Ms. Thatcher, it would have been "***extremely*** reasonable" to use a rate of $325.00 for Mr. Santillo and a rate of $190.00 for Mr. Gottesfeld. (*Id.*) (emphasis in original). In *Grayson*, Judge Titus ultimately adopted Judge Schulze's report and recommendation in which she concluded that the following rates were reasonable: $300.00 per hour for Mr. Markovitz, $250.00 per hour for Mr. Santillo, and $175.00 per hour for Mr. Gottesfeld. *See Grayson v. Register Tapes Unlimited, Inc.*, No. RWT-11-887, 2013 WL 1953342, at *2 (D.Md. May 9, 2013), *accepted and adopted by Grayson v. Register Tapes Unlimited, Inc.*, No. RWT-11-887, Order of July 15, 2013.[4]

Finally, class counsel contend that the use of the higher end of the Appendix B ranges is warranted based on their "significant experience litigating complex wage and hour class and collective actions." (ECF No. 36, at 3). According to Mr. Santillo, his firm has successfully represented employees in 54 class or collective actions throughout the United States and is actively litigating approximately 40 other collective or class actions. (ECF No. 36, at 19-21, Supplemental Santillo Decl. ¶ 4). According to Mr. Markovitz, his firm is currently litigating "several dozen employment-related cases" in state and

---

[4] Class counsel submit a copy of Judge Titus's adoption and approval order at pages 10-12 of ECF No. 36.

federal courts. (ECF No. 36, at 14-17, Supplemental Markovitz Decl. ¶ 4).

Based on the evidence submitted by class counsel and an analysis of the relevant *Kimbrell's* factors, the proposed lodestar figure of $41,668.00 appears reasonable, as it is based on a reasonable number of total hours and reasonable hourly rates ($300.00 for Mr. Markovitz, $250.00 for Mr. Santillo, $190.00 for Mr. Gottesfeld, and $115.00 for all paralegals and law clerks). The time records do not reflect any overly redundant, excessive, or unnecessary work. To the extent that there was some duplication in efforts or time expended on tasks not typically compensated,[5] the deductions that might otherwise be warranted would not exceed the $11,000.00 disparity between the proposed lodestar figure and the actual amount of class counsel's fee request. Additionally, class counsel's proposed lodestar figure is reasonable considering the complexity of the case, particularly the intricacies associated with class and collective action practice; the knowledge, labor, and time required to initiate an FLSA case and to achieve a class-wide

---

[5] For example, Appendix B to the Local Rules establishes a general rule that only one lawyer for each party will be compensated for certain types of tasks, including depositions, hearings, and client conferences. Here, class counsel seek compensation for time expended by both Mr. Markovitz and Mr. Santillo in connection with certain hearings and conferences in which both attorneys participated. (*See* ECF No. 34-1, at 37-55).

settlement agreement of this nature; the inherent risks associated with undertaking cases on a contingency basis; the evidence of prevailing market rates in Greenbelt, Maryland; and the use of the same or similar hourly rates in other wage-and-hour cases that have been litigated in this division.

The question remains whether a reduction is necessary based on the scope of the Settlement Agreement as compared to the claims asserted by Mr. Edelen in his original complaint. As discussed, Mr. Edelen originally asserted two types of wage-and-hour violations – one relating to the calculation of overtime rates of pay and one relating to improper compensation for "off-the-clock" work – but later narrowed the scope of his suit by filing an amended complaint. The Settlement Agreement resolves only the FLSA and MWHL claims relating to Defendants' methods for calculating overtime rates of pay.

As Judge Blake recently observed, it is appropriate "to subtract plaintiffs' billable hours attributable to unsuccessful claims when they are 'distinct in *all respects* from [the] successful claims.'" *Andrade v. Aerotek, Inc.*, 852 F.Supp.2d 637, 642 (D.Md. 2012) (quoting *Hensley*, 461 U.S. at 440 (emphasis added in *Andrade*)). In *Andrade*, Judge Blake explained that the plaintiffs' successful FLSA off-the-clock claims could not be characterized as being distinct "in all respects" from their unsuccessful FLSA misclassification claims. *Id.* Thus,

while it was appropriate to subtract those hours that were readily identifiable as being devoted solely to the unsuccessful claims, the plaintiffs were also entitled to reasonable compensation for hours that "benefitted or addressed both claims" or "aid[ed] the litigation as a whole." *Id.* (internal quotation marks and citations omitted).

Here, class counsel's time records do not include any entries that are readily identifiable as relating only to Mr. Edelen's unsuccessful off-the-clock claim. Rather, it appears that class counsel's work throughout the case benefitted or addressed both claims and aided the litigation as a whole. Accordingly, there is no basis for reducing the lodestar figure of $41,668.00 beyond the amount requested (*i.e.*, $30,800.80) based on Mr. Edelen's lack of success on his off-the-clock claim.

Class counsel also seeks the following litigation costs: (1) filing fees ($400.00); (2) online research & PACER fees ($92.72); (3) postage, express mail, and messenger fees ($9.78); (4) deposition transcript fees ($381.50); and (5) printing and photocopying costs ($315.20). (ECF NO. 34-1, at 39 & 50). District courts have discretion to determine the costs that will be taxed in FLSA cases. *Roy v. Cnty. of Lexington, S.C.*, 141 F.3d 533, 549 (4th Cir. 1998). Costs that may be charged include "those reasonable out-of-pocket expenses incurred by the

attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988). Examples of costs that have been charged include necessary travel, depositions and transcripts, computer research, postage, court costs, and photocopying. *Almendarez v. J.T.T. Enters. Corp.*, No. JKS 06-68, 2010 WL 3385362, at *7 (D.Md. Aug. 25, 2010) (citing *Vaughns v. Bd. of Educ. of Prince George's Cnty.*, 598 F.Supp. 1262, 1289-90 (D.Md. 1984)). Here, the expenses requested by class counsel appear to be reasonable and typical. Accordingly, Mr. Edelen's request for $30,800.80 in attorneys' fees and $1,999.20 in expenses will be approved.

**E.   Incentive Award**

As a last step in granting final approval of the Settlement Agreement, the reasonableness of the $1,000.00 incentive payment to Mr. Edelen must be assessed.

Incentive payments to class representatives have been awarded in both FLSA collective actions and Rule 23 class actions. *See, e.g., Hoffman*, 2010 WL 1176641, at *3 (hybrid FLSA collective action and MWHL class action); *In re Tyson Foods, Inc.*, No. RDB-08-1982, 2010 WL 1924012, at *4 (D.Md. May 11, 2010) (Rule 23 class action). To determine whether an incentive payment is warranted, it is appropriate to consider "the actions the plaintiff has taken to protect the interests of

37

the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Hoffman*, 2010 WL 1176641, at *3 (internal quotation marks omitted); *see also Leigh v. Bottling Grp., LLC*, No. DKC 10-0218, 2012 WL 460468, at *7 (D.Md. Feb. 10, 2012) (observing that, in the FLSA context, incentive awards to named plaintiffs may be appropriate if "they faced substantial risks by participating in the lawsuit and incurred actual expenses during the litigation").

Here, the Settlement Agreement contemplates an incentive payment of $1,000.00 to Mr. Edelen, in addition to his receipt of a settlement payment of $688.00. (ECF No. 29-1 ¶ 12 & Ex. A). In the final approval motion, class counsel represent that this award "is justified by the diligent efforts of" Mr. Edelen, who "independently investigated the law," "made efforts to locate legal counsel," "participat[ed] in discovery," and "achieve[d] a recovery on behalf of others." (ECF No. 34-1, at 31-32). At the final fairness hearing held on July 22, 2013 – which Mr. Edelen attended in person – class counsel expounded upon the specifics of Mr. Edelen's participation in this lawsuit, explaining that he sought out counsel after independently reviewing his paystubs and suspecting something might be amiss. Mr. Edelen also made contributions during discovery by preparing for a possible deposition and by

responding to written discovery requests. According to class counsel, Mr. Edelen then made himself available during settlement negotiations to discuss potential terms.

In light of Mr. Edelen's role in initiating this lawsuit and in helping to achieve a favorable resolution, the relatively modest incentive payment of $1,000.00 is reasonable. Additionally, although there is no indication that Mr. Edelen faces any specific challenges in his current or future job prospects as a result of his participation in this lawsuit, there clearly is a risk that he could. It is also significant that the $1,000.00 incentive payment appears to have been negotiated for separately and does not decrease the recovery available to other class members. Finally, the incentive award serves as additional consideration for Mr. Edelen's broad, general release of claims against Defendants. (*See* ECF No. 29-1 ¶ 12). Accordingly, the $1,000.00 incentive payment will be approved as reasonable.

## III. Conclusion

For the foregoing reasons, the unopposed motion for final approval filed by Plaintiff Christopher Edelen will be granted. A separate Order will follow.

_____ /s/ _____
DEBORAH K. CHASANOW
United States District Judge
